UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CR-00467 JAR |
| | ) | |
| LOYSE DOZIER, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY-PLEA AGREEMENT

COME NOW the parties and hereby agree as follows:

### 1.   PARTIES

The parties are Defendant Loyse Dozier, represented by defense counsel David A. Bruns, and the United States of America ("the Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2.   GUILTY PLEA

**A.     The Plea:**   Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A), in exchange for Defendant's voluntary plea of guilty to Counts One, Three, Four, and Five of the Superseding Indictment, the Government agrees to move for the dismissal as to Defendant of Counts Two and Six at the time of sentencing. Moreover, the Government agrees that no further federal prosecution will be brought in this District relative to Defendant's violations of federal law, known to the Government at this time, arising out of the events set forth in the Indictment.

**B.**     **The Sentence:**     The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. The parties understand that the Court is neither a party to, nor bound by, the Guidelines recommendations agreed to in this document. **Further, based upon the parties' negotiations that led, in part, to Defendant's guilty plea, the parties agree to jointly recommend the following sentence:**

> **Count One:   384 months (32 years) imprisonment;**
>
> **Count Three: 300 months (25 years) imprisonment;**
>
> **Count Four:  180 months (15 years) imprisonment; and**
>
> **Count Five:   240 months (20 years) imprisonment.**

**The parties further agree to jointly recommend that the sentences on all Counts be served concurrently, for a total of 384 months imprisonment.**

3.   **ELEMENTS**

**A.**     **Count One:**     As to Count One, Defendant admits to knowingly violating 18 U.S.C. § 2119, admits there is a factual basis for the plea, and fully understands that the elements of the crime are as follows:

> **(i)**     Defendant took a Mercedes CL 250, vehicle identification number ("VIN") WDDSJ4EB0EN078169, from a person;
>
> **(ii)**    Defendant did so by means of force and violence;
>
> **(iii)**   the Mercedes CL 250 had been transported in interstate commerce;
>
> **(iv)**    at the time Defendant took the Mercedes CL 250 he intended to cause death or serious bodily injury; and
>
> **(v)**     the death of a person resulted from taking the Mercedes CL 250.

**B.**     **Count Three:** As to Count Three, Defendant admits to knowingly violating 18 U.S.C. § 2119, admits there is a factual basis for the plea, and fully understands that the elements of the crime are as follows:

  **(i)**  Defendant attempted to take a Kia Optima, vehicle information number ("VIN") 5XXGT4L33KG280436, from a person;

  **(ii)**  Defendant did so by means of force and violence;

  **(iii)**  the Kia Optima had been transported in interstate commerce;

  **(iv)**  at the time Defendant attempted to take the Kia Optima, he intended to cause death or serious bodily injury; and

  **(vi)**  Defendant caused serious bodily injury to a person while attempting to take the Kia Optima.

**C.**     **Count Four:**   As to Count Four, Defendant admits to knowingly violating 18 U.S.C. § 922(g)(1), admits there is a factual basis for the plea, further fully understands that the elements of the crime are as follows:

  **(i)**  Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year;

  **(ii)**  Defendant, thereafter, knowingly possessed a firearm;

  **(iii)**  at the time Defendant knowingly possessed the firearm, he knew he had been convicted of a crime punishable by imprisonment for more than one year; and

  **(iv)**  the firearm was transported across a state line at some point during or before Defendant's possession.

**D.**     **Count Five:**   As to Count Five, Defendant admits to knowingly violating 21 U.S.C. § 841(a)(1), admits there is a factual basis for the plea, and fully understands that the elements of the crime are as follows:

(i)     Defendant was in possession of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance;

(ii)    Defendant knew that he was in possession of a mixture or substance containing a detectable amount of fentanyl; and

(iii)   Defendant intended to distribute some or all of the mixture or substance containing a detectable amount of fentanyl to another person.

## 4.  **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to U.S.S.G. § 1B1.3.

### July 10, 2022 Carjacking

On July 10, 2022, Defendant shot and killed Laruth Jones while taking her Mercedes CLA 250. Shortly after 5:00 p.m. that evening, Defendant arrived at the Raqqa Mart located at 352 Chambers in Riverview, a St. Louis County municipality within the Eastern District of Missouri. Defendant was a passenger in an Audi SQ5 that parked on the lot of the Raqqa Mart near Ms. Jones' Mercedes. While Ms. Jones was standing on the lot near the entrance to the store, Defendant, wearing a full-face mask, exited the Audi and entered the driver's seat of Ms. Jones' Mercedes. Ms. Jones observed Defendant sitting in the driver's seat of her car, approached Defendant, and confronted Defendant with a handgun. Defendant was also armed with a handgun, which he produced. Defendant and Ms. Jones exchanged gunfire, and one or more shots that Defendant fired struck Ms. Jones, causing her death. Before leaving the Raqqa Mart in Ms. Jones' Mercedes, Defendant got out of the car and retrieved the firearm that Ms. Jones dropped when he shot her.

Later that evening, Defendant drove the Mercedes to an alley between Linton and College in St. Louis City, where he set the car on fire. The Mercedes was not manufactured in the State of Missouri and, therefore, had been transported in interstate commerce before July 10, 2022.

<u>August 1, 2022 Attempted Carjacking</u>

A couple of weeks later, on August 1, 2022, Defendant shot C.J. while attempting to take her Kia Optima. Around 2:00 p.m., Defendant, again wearing a full-face mask, walked onto the parking lot of the Walgreens located at 1400 North Grand in St. Louis City, within the Eastern District of Missouri. Defendant approached a Kia Optima that was parked on the lot, opened the driver's door, pointed a firearm at C.J., and ordered C.J. to get out of the car. C.J. complied. Once outside the car, C.J. gave Defendant her keys to the Kia Optima. Defendant then shot C.J. two times before he entered her car.

An off-duty officer with the Florissant Police Department, who was working as security inside the Walgreens, ran onto the lot after Defendant shot C.J. Defendant then got out of the Kia Optima and ran from the area. Officers with the St. Louis Metropolitan Police Department responded to the Walgreens and, during their investigation, located Defendant's iPhone that he had dropped inside the Kia Optima before fleeing. SLMPD officers also located and seized two .45 caliber shell casings from the Walgreens lot. A firearms examiner compared the casings to a .45 caliber shell casing that was recovered from the scene of Laruth Jones' murder and determined that the casings were fired from the same firearm. The Kia Optima was not manufactured in the State of Missouri and, therefore, had been transported in interstate commerce before August 1, 2022.

<u>August 10, 2022 Arrest</u>

On August 10, 2022, Defendant attempted to flee from SLMPD officers who spotted him at the BP gas station located at West Florissant and Adelaide in St. Louis City, within the Eastern District of Missouri. While running, Defendant threw down a firearm in an open lot adjacent to the BP gas station. SLMPD officers were able to catch and apprehend Defendant a short distance later. While searching Defendant, they located a magazine loaded with .45 caliber ammunition in Defendant's pocket. The officers also located and seized an envelope containing multiple individually packaged baggies of a suspected controlled substance in Defendant's pocket.

The officers then retraced Defendant's flight path and located and seized the bag that Defendant removed from his body while running. Inside, the officers located numerous capsules containing a suspected controlled substance. The officers also located and seized the firearm that Defendant threw down, a Smith & Wesson, M&P Shield, .45 caliber semiautomatic pistol. A firearms examiner later compared cartridge casings from test shots fired from the M&P Shield Defendant possessed to the .45 caliber cartridge casings recovered from both the scene of Laruth Jones' murder and the Walgreens lot where Defendant shot C.J. while attempting to take her Kia Optima. The firearms examiner determined that the M&P Shield was fired in both incidents. Investigators further determined that the M&P Shield was the firearm that Defendant took from Laruth Jones after shooting her on the Raqqa Mart parking lot.

The firearms examiner further determined that the Smith & Wesson, M&P Shield was manufactured outside the State of Missouri, and, therefore, it had been transported across state lines and in interstate commerce prior to or during Defendant's possession. The Smith & Wesson, M&P Shield can expel a projectile by the action of an explosive and is, therefore, a "firearm" as defined under federal law.

Prior to August 10, 2022, Defendant was convicted of at least one felony crime punishable by imprisonment for a term exceeding one year. At the time Defendant possessed the aforementioned firearm, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

The suspected controlled substances that SLMPD officers recovered from Defendant's bag and pocket were submitted to and analyzed by an expert criminalist with the SLMPD Crime Laboratory. The criminalist confirmed the suspected controlled substance inside the 48 capsules recovered from Defendant's bag was fentanyl, a Schedule II controlled substance, with an aggregate weight of 5.76 grams. Defendant knew the capsules contained a controlled substance. Defendant admits knowingly possessing the capsules containing fentanyl with the intent to distribute some or all of them to another individual. The criminalist further confirmed that the suspected controlled substance inside the 25 plastic baggies recovered from Defendant's pocket contained cocaine base, a Schedule II controlled substance, with an aggregate weight of 2.5 grams.

## 5.   **STATUTORY PENALTIES**

**A.      Statutory Penalties:**   Defendant fully understands that the maximum possible penalties provided by law for the crimes to which Defendant is pleading guilty are:

**(i)      Count One:** imprisonment for any number of years up to life, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

**(ii)     Count Three:** imprisonment of not more than 25 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

(iii)    **Count Four:**  imprisonment of not more than 15 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

(iv)    **Count Five:** imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall impose a period of supervised release of at least 3 years.

## 6.    U.S. SENTENCING GUIDELINES (2021 MANUAL)

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply:

A.    **Offense Conduct**

### COUNT ONE
### CARJACKING RESULTING IN DEATH

(i)    **Chapter 2 Offense Conduct**

(a)    **Base Offense Level:** The parties agree that the Base Offense Level is 43, as found in U.S.S.G. § 2A1.1. The parties agree that under U.S.S.G. § 2B3.1(c)(1), the cross reference to U.S.S.G. § 2A1.1 is appropriate, as the victim, Laruth Jones, was killed under circumstances that would constitute murder pursuant to 18 U.S.C. § 1111.

(b)    **Specific Offense Characteristics:** The parties agree that no Specific Offense Characteristics apply in light of the cross-reference to U.S.S.G. § 2A1.1.

### COUNT THREE
### ATTEMPTED CARJACKING RESULTING IN SERIOUS BODILY INJURY

(i)    **Chapter 2 Offense Condcut**

(a)     **Base Offense Level:** The parties agree that the Base Offense Level is 20, as found in U.S.S.G. § 2B3.1(a).

(b)     **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

- The seven-level increase pursuant to U.S.S.G. § 2B3.1(b)(2)(A) because a firearm was discharged;

- The four-level increase pursuant to U.S.S.G. § 2B3.1(b)(3)(B) because the victim sustained a serious bodily injury; and

- The two-level increase pursuant to U.S.S.G. § 2B3.1(b)(5) because the offense involved carjacking.

**COUNT FOUR**
**FELON IN POSSESSION OF A FIREARM**

(i)     **Chapter 2 Offense Conduct**

(a)     **Base Offense Level:** The parties agree that the Base Offense Level is found in U.S.S.G. § 2K2.1(a) and depends on, among other things, the nature of Defendant's criminal history and the characteristics of the firearm. The Base Offense Level may also be determined under U.S.S.G. § 4B1.4 if Defendant is determined to be an Armed Career Criminal.

(b)     **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

- The two-level increase pursuant to U.S.S.G. § 2K2.1(b)(4) because Defendant possessed a stolen firearm; and

Page **9** of **17**

- The four-level increase pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because Defendant possessed a firearm in connection with another felony offense, including possession with the intent to distribute cocaine base.

### COUNT FIVE
### POSSESSION WITH INTENT TO DISTRIBUTE FENTANYL

**(i)** **Chapter 2 Offense Conduct**

**(a)** **Base Offense Level:** The parties agree that Defendant is accountable for possessing with intent to distribute 5.76 grams of fentanyl and 2.5 grams of cocaine base. The parties further agree that the total amount of controlled substances possessed by Defendant are, in the aggregate, at least 20kg but less than 40kg of converted drug weight, resulting in a Base Offense Level of 16, as found in U.S.S.G. § 2D1.1(c)(12).

**(b)** **Specific Offense Characteristics:** The parties agree that the two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1) applies because Defendant possessed a dangerous weapon.

**(ii)** **Chapter 3 and 4 Adjustments**

**(a)** **Grouping:** The parties agree that pursuant to U.S.S.G. § 3D1.2(c), Counts Four and Five will be grouped together ("Count Group One") because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

**(b)** **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to U.S.S.G.

§ 3E1.1(b)(2), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The parties further agree that Defendant's eligibility for this reduction is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the Government subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility, including criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**B.**     **Estimated Total Offense Level:**   Based on these recommendations, the parties estimate that the Total Offense Levels are as follows:

**(i)**     **Count One:** The parties agree that the Total Offense Level for Count One is 40.

**(ii)**     **Count Three:** The parties agree that the Total Offense Level for Count Three is 30.

**(iii)**     **Count Group One:** The parties agree that with respect to Count Group One, the Total Offense Level will depend on the Base Offense Level determined pursuant to U.S.S.G. § 2K2.1(a), along with other relevant factors stated above, unless Defendant is an Armed Career Criminal. Depending on the underlying offense and Defendant's criminal history, Defendant could be an Armed Career Criminal pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. If the Court finds Defendant is an Armed Career Criminal, the Total Offense Level may be

Page **11** of **17**

higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that Defendant is or is not an Armed Career Criminal.

      **C.**    **Criminal History:**   The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

      **D.**    **Effect of Parties' U.S. Sentencing Guidelines Analysis:**   The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7.**    <u>**WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**</u>

      **A.**    **Appeal:**   Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under 18 U.S.C. § 3742.

      **i.**    **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including any issues relating to pretrial motions, discovery and the guilty plea.

      **ii.**    **Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues, provided that the Court sentences the defendant to the parties' joint recommendation of 384 months imprisonment. Otherwise, the adversely affected party—the

defendant if the sentence is higher, or the Government if the sentence is lower—reserves the right

to appeal only sentencing issues related to: (1) application of Sentencing Guideline offense-level

adjustments (including those based on criminal history) not specifically set forth in the plea

agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation

of the defendant's criminal history category; or (3) substantive reasonableness.

      **B.**    **Habeas Corpus:**   Defendant agrees to waive all rights to contest the conviction

or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, except

for claims of prosecutorial misconduct or ineffective assistance of counsel.

      **C.**    **Right to Records:**   Defendant waives all rights, whether asserted directly or by a

representative, to request from any department or agency of the United States any records

pertaining to the investigation or prosecution of this case, including any records that may be sought

under the Freedom of Information Act, *see* 5 U.S.C. § 522, or the Privacy Act, *see* 5 U.S.C. § 552(a).

**8.**   **OTHER**

      **A.**    **Disclosures Required by the United States Probation Office:**   Defendant

agrees to truthfully complete and sign forms as required by the United States Probation Office

prior to sentencing and consents to the release of these forms and any supporting documentation

by the United States Probation Office to the United States.

      **B.**    **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the Government to take any civil, tax,

immigration/deportation or administrative action against Defendant.

      **C.**    **Supervised Release:**   Pursuant to any supervised release term, the Court will

impose standard conditions upon Defendant and may impose special conditions related to the

crime Defendant committed. These conditions will be restrictions on Defendant to which

Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in 18 U.S.C. § 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

      **D.**    **Mandatory Special Assessment:**    This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $400, which Defendant agrees to pay at the time of sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

      **E.**    **Possibility of Detention:**    Defendant may be subject to immediate detention pursuant to the provisions of 18 U.S.C. § 3143.

      **F.**    **Fines and Costs of Incarceration and Supervision:**    The Court may impose a fine, costs of incarceration, and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately.

      **G.**    **Forfeiture:**    Defendant agrees to forfeit all of Defendant's interest in all items seized by law-enforcement officials during the course of their investigation. Defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of Defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the Government and to rebut the claims of nominees and/or alleged third party owners. Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

9.    **ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS**

In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, such as motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the Government's case and any defenses.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**

This document constitutes the entire agreement between Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

11. **CONSEQUENCES OF POST-PLEA MISCONDUCT**

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including obstruction of justice and denial of acceptance of responsibility.

## 12.  NO RIGHT TO WITHDRAW GUILTY PLEA

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement that deal with charges the Government agrees to dismiss or not to bring.

11.15.2023
Date

Matthew A. Martin
Assistant United States Attorney

X 11/6/23
Date

X Loyse Dozier
Defendant

11/6/23
Date

David A. Bruns
Attorney for Defendant